EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAMBRIDGE PLACE INVESTMENT )
MANAGEMENT, INC., )
 )
   Plaintiff, )
  v. )  CIVIL ACTION
 )  NO. 10-11376-NMG
MORGAN STANLEY & CO., INC., )
et al., )
 )
   Defendants. )

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION TO REMAND

December 28, 2010

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff Cambridge Place Investment Management, Inc. ("CPIM")

commenced an action in Massachusetts Suffolk Superior Court alleging violations of the

Massachusetts Uniform Securities Act, Mass. Gen. Laws ch. 110A, § 410, in connection

with the sale of mortgage-backed securities. The defendants are investment firms,

underwriters and dealers who sold mortgage-backed securities (collectively the "Wall

Street Bank defendants") and the "Depositor defendants" who purchased or acquired

mortgage loans, securitized them, and were the "issuers" of the securities sold by the

Wall Street Bank defendants. The defendants removed this action to federal court under

28 U.S.C. §§ 1441 and 1452 on the grounds that this action is "related to" the bankruptcy

filings by some of the mortgage loan originators from whom the defendants acquired the mortgage-backed securities. See 28 U.S.C. §§ 1334(b) and 1452(a). The defendants further argue that there may be diversity jurisdiction if CPIM, who brought this action as assignee of claims from nine hedge funds, is not the proper plaintiff. CPIM has moved to remand this action to state court. (Docket No. 133)

For the reasons detailed in this court's Report & Recommendation on Defendants' Motion to Take Jurisdictional Discovery ("Diversity R&R"), this court has concluded that CPIM is the proper plaintiff, and that there is no diversity jurisdiction in this court.[1] Therefore, this Report and Recommendation will be limited to whether this court has jurisdiction on the grounds that this case is related to bankruptcy proceedings.

Pursuant to its motion to remand, CPIM contends that the case should be remanded for lack of subject matter jurisdiction as it is not sufficiently related to bankruptcy proceedings to establish federal jurisdiction. In the alternative, CPIM contends that this court should abstain from hearing this matter and remand it to state court, either on the basis of mandatory abstention under 28 U.S.C. § 1334(c)(2), or equitable abstention pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b). For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned

---

[1]  As noted in the Diversity R&R, there may be diversity between CPIM and one, uniden-
tified, defendant. This court has recommended that the issue whether that defendant's claim
should be severed should be decided in the context of an appropriate motion to separate that
defendant's case.

that the plaintiff's motion to remand (Docket No. 133) be ALLOWED on the basis of abstention.

## II.  STATEMENT OF FACTS

The following facts are undisputed unless otherwise indicated, and are relevant to

the motion to remand.  Additional facts can be found in the Diversity R&R.

### Overview

CPIM is a Delaware corporation with a principal place of business in Concord,

Massachusetts.  Complaint ("Compl.") ¶ 11.  It "was responsible for the sourcing, review,

analysis, and purchase decisions for U.S. investments for its clients," including nine

foreign hedge funds known as Caliber Global Investment Ltd., CAMBER 3 PLC,

CAMBER 4 PLC, CAMBER 5 Ltd., CAMBER 7 PLC, CPIM Structured Credit Fund 20

LP, CPIM Structured Credit Fund 500 LP, CPIM Structured Credit Fund 1000 LP, and

CPIM Structured Credit Fund 1500 LP (collectively the "Clients" or the "hedge funds").

Id. ¶ 12.  The Wall Street Defendants are 16 banks that offered or sold approximately

$2.4 billion of residential mortgage-backed securities ("RMBS") to CPIM for its hedge

fund clients between 2005 and 2007.  Id. ¶¶ 1, 15-32.  The Depositor Defendants are 44

Special Purpose Vehicles that, working with the Wall Street Defendants, also offered or

sold RMBS to CPIM.  Id. ¶¶ 6, 31.  None of the defendants has filed for bankruptcy.

Stated simply, the mortgage pass-through securities at issue in this litigation

represent interests in a pool of mortgages.  Id. ¶ 33.  "Although the structure and

underlying collateral of the mortgages may vary, the basic principle of pass-through

securities remains the same: The cash flow from the pool of mortgages is 'passed

through' to the securities holders when payments are made by the underlying mortgage borrowers." Id. "To create RMBS, a 'depositor' first acquires an inventory of loans from one or more mortgage loan originators, and then transfers the acquired pool of loans to the issuing trust entity. [Id.] ¶ 34. The pool of loans for each RMBS usually includes thousands of loans. [Id.] ¶ 39." Memorandum of Law in Support of Plaintiff's Motion to Remand (Docket No. 134) ("CPIM Mem.") at 2-3. The Wall Street Defendants underwrote the sale of the securities in a securitization and, according to the plaintiff, were "responsible for gathering, verifying, and presenting to potential investors accurate and complete information about the credit quality and characteristics of the loans that [were] deposited into the trust." Compl. ¶ 39. The defendants contend they, in turn, relied on representations made by the entities which originated the mortgage loans.

### Indemnification Agreements

As noted above, none of the defendants is in bankruptcy. Rather, the defendants base their claim of federal jurisdiction on their contention that the instant case is "related to" bankruptcy filings by entities that originated the mortgage loans or their parent corporations. Some of the defendants have contractual indemnification agreements with some of the mortgage loan originators whereby the defendants may be entitled to indemnification or contribution if they are found liable to the plaintiff for representations attributable to the mortgage originators. These indemnification agreements are found in "over 4,000 pages of agreements between various Non-Party Originators, certain Defendants and other purportedly-related entities." Plaintiff's Reply Memorandum of Law in Further

-4-

Support of Its Motion to Remand (Docket No. 188) ("CPIM Reply") at 6. Their terms are not consistent and not all of the defendants are parties to an indemnification agreement. See generally Declaration of Brian Boyle (Docket No. 165). In some cases, the indemnification agreement may give rise to a claim for attorneys' fees incurred by some defendants in connection with the instant proceeding, and at least one proof of claim for such fees has been filed in a bankruptcy proceeding. In other cases, the indemnification obligation will arise, if at all, only after the instant case is completed and a new action against the debtor is commenced. At least one of the bankruptcy proceedings may have been terminated already, with a Chapter 11 plan having been confirmed. See CPIM Reply at 8. In some cases, there are reciprocal indemnification obligations between the defendants and the non-party originators. Id. at 7-8. Finally, it appears that none of the indemnification agreements will apply to the claims that the defendants, themselves, made misrepresentations about their own conduct in evaluating and acquiring the loans. See, e.g., Compl. ¶¶ 233, 234-499.

Additional facts will be provided below where appropriate.

## III.  DISCUSSION

### A.  Jurisdiction Over Cases "Related To" Bankruptcy Proceedings

### Standard of Review

"Bankruptcy jurisdiction is governed principally by statute[,]" particularly 28 U.S.C. § 1334, which "vests original jurisdiction in the district courts over 'all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" In re

Boston Reg'l Med. Ctr., 410 F.3d 100, 105 (1st Cir. 2005) (quoting 28 U.S.C. § 1334(b)).

As the First Circuit has explained:

> The statutory grant of "related to" jurisdiction is quite broad.
> Congress deliberately allowed the cession of wide-ranging
> jurisdiction to the bankruptcy courts to enable them to deal
> efficiently and effectively with the entire universe of matters
> connected with bankruptcy estates. *See Pacor, Inc. v. Higgins*, 743
> F.2d 984, 994 (3d Cir. 1984). Thus, bankruptcy courts ordinarily
> may exercise related to jurisdiction as long as the outcome of the
> litigation "potentially [could] have some effect on the bankruptcy
> estate, such as altering debtor's rights, liabilities, options, or freedom
> of action, or otherwise have an impact upon the handling and
> administration of the bankrupt estate." *In re G.S.F. Corp.*, 938 F.2d
> 1467, 1475 (1st Cir. 1991) (quoting *In re Smith*, 866 F.2d 576, 580
> (3d Cir. 1989)).

Id. This grant of "related to" jurisdiction is not limited to bankruptcy courts but, rather,

grants jurisdiction to all district courts. Maritime Elec. Co., Inc. v. United Jersey Bank,

959 F.2d 1194, 1211-12 & n.6 (3d Cir. 1991). Finally, although "related to" jurisdiction

is to be construed broadly, courts also recognize that there is a "strong presumption

against removal jurisdiction generally." Natale v. Pfizer, Inc., 379 F. Supp. 2d 161, 172

(D. Mass. 2005) (quotations and citations omitted).

The parties disagree strenuously as to whether the instant litigation is "related to"

the bankruptcy proceedings of any of the loan originators. CPIM contends that the case

being litigated here simply is too remote to be related to any bankruptcy proceedings.

CPIM argues that "[a]t best, it is a mere precursor to the potential third party claim for

indemnification" by the defendants against the loan originators. Pacor, 743 F.2d at 995.

Thus, the loan originators would not be bound by any finding of liability, including a

finding that there were misrepresentations, as they are not parties to the instant litigation, and the defendants "would still be obligated to bring an entirely separate proceeding to receive indemnification." Id. CPIM relies on a line of cases which hold that absent an "automatic creation of liability against [the loan originators] on account of a judgment against [the defendants,]" the action is "not 'related to' bankruptcy and there therefore there [is] no jurisdiction to remove a case to federal court." Id. at 995, 996. See also In re Santa Clara County Child Care Consortium, 223 B.R. 40, 49 (B.A.P. 1st Cir. 1998) (where state court proceeding "will merely determine the validity and enforceability of a guaranty between two creditors of the debtor[,]" the "proceeding is not sufficiently related to the debtor's bankruptcy case to confer subject-matter jurisdiction upon the bankruptcy court"); In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002) (where any indemnification claims that defendants may have against non-party debtors "have not yet accrued and would require another lawsuit before they could have an impact on . . . bankruptcy proceeding[s]," no "related to" jurisdiction exists); In re W.R. Grace & Co., 591 F.3d 164, 173 (3d Cir. 2009) ("in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must affect the bankruptcy without the intervention of yet another lawsuit" — no federal jurisdiction where third party would first have to be found liable and would then have to bring an indemnification or contribution claim against the debtor) (punctuation and citation omitted)). In sum, CPIM contends that this case falls squarely within the principle that "[w]here the right to indemnification is contingent on a factual finding in the action not involving the

bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankrupt estate." Steel Workers Pension Trust v. Citigroup, Inc., 295 B.R. 747, 750 (E.D. Pa. 2003).

For their part, the defendants argue that the potential indemnification obligations here are so large, that the instant suit will clearly impact the bankruptcy proceedings of the loan originators.  In addition, they point to the fact that, under at least one indemnification agreement, the debtor is liable for the legal fees incurred by the defendant in the instant case, without regard to whether the defendant prevails here.  Finally, they argue that the existence of written contractual obligations satisfies the requirement that indemnification obligations are sufficiently automatic as to satisfy the "related to" nexus.  See Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) ("contractual indemnification rights may give rise to 'related to' jurisdiction"; court distinguishes In re Federal-Mogul Global, Inc. as involving "tort contribution principles").  The First Circuit has not yet addressed the appropriate standard to be applied in evaluating whether contractual indemnification obligations give rise to "related to" bankruptcy jurisdiction.

## Cases Involving Mortgage Pass-Through Certificates

In other cases involving mortgage pass-through certificates, courts have seemingly consistently found "related to" jurisdiction.[2]  As the court explained in City of Ann Arbor

---

[2]  While an exhaustive search has not been undertaken, neither this court nor, apparently, the parties have found a factually similar case where "related to" jurisdiction was not found.  In

<u>Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.</u>, 572 F. Supp. 2d 314 (E.D.N.Y. 2008), a class action alleging federal securities law violations in connection with the sale of mortgage pass-through certificates and involving facts very similar to the instant cases:

> An impact on the debtor estate sufficient to invoke federal jurisdiction has been found where the defendant in the allegedly related action has a contractual claim for indemnification against the debtor. While such a claim does not arise unless the defendant invoking bankruptcy jurisdiction is held liable, it has nonetheless been held to have the required "conceivable" effect on the debtor estate .... Even in the absence of a contractual provision for indemnification, federal jurisdiction has been found. In such cases, jurisdiction has been held to exist where there is a "reasonable" legal basis for the claim of indemnification .... Courts of Appeal in other circuits have also adopted the conceivable effect test, finding bankruptcy jurisdiction where a claim for indemnification could effect the debtor estate.

<u>Id.</u> at 317 (internal citations omitted). The <u>Ann Arbor</u> court held that there was "more than a 'reasonable' legal basis" for both the common law and contractual indemnification claims which could be brought by the sellers of mortgage backed securities against the loan originators. <u>Id.</u> at 318. Furthermore, the court noted, at least one proof of claim for reimbursement of fees and expenses incurred in the securities litigation had been filed in the bankruptcy estate of a loan originator. <u>Id.</u> at 318-19. "Unlike the claims for indemnification, these claims are already partially liquidated and not conditional upon the finding that Defendants are liable to Plaintiff here." <u>Id.</u> at 318-19. The court concluded that the matter was "related to" the bankruptcy proceedings and that removal was proper. <u>Id.</u> at 319.

---

some cases, however, the matter has been remanded on abstention grounds.

CPIM correctly argues that the First Circuit has not adopted the "conceivable effect test" on which the Ann Arbor court relied. See CPIM Reply (Docket No. 188) at 4-5. However, the First Circuit has recognized that "related to" jurisdiction is to be construed fairly broadly, and encompasses "proceedings which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d 61, 68 (1st Cir. 2002) (quotations and citations omitted). Clearly, a finding of liability pursuant to an indemnification agreement on claims of the magnitude presented here would have such an impact. Therefore, this court recommends that "related to" jurisdiction be found in this case, like in other factually similar cases. See, e.g., Lone Star Fund V (U.S.), 594 F.3d at 387 (concluding that "related to" jurisdiction existed where defendant Barclays "relie[d] heavily, if not exclusively, on contractual indemnity provisions with [mortgage originator] New Century containing representations about the quality of the mortgage loans purchased by Barclays, which [were] nearly identical to the representations Barclays made to [plaintiff] Loan Star."); Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc., No. C10-0139 RSM, 2010 WL 3662345, at *6 (W.D. Wash. Sept. 1, 2010) ("related to" jurisdiction found based on indemnification agreement between Barclays and bankrupt loan originator Indy Mac which covered "any untrue statement or alleged untrue statement of a material fact" by Indy Mac (emphasis omitted)).

"Related to" jurisdiction also is appropriate in the instant case even adopting CPIM's contention that there must be "'an unconditional duty to indemnify'" and a judgment against a defendant that "'would automatically result in indemnification liability.'" CPIM Reply (Docket No. 188) at 4 (quoting TD Bank, N.A. v. Sewall, 419 B.R. 103, 106 (Bankr. D. Me. 2009)) (emphasis omitted). In light of the fact that there are some liquidated debts in the form of indemnification claims for legal fees and expenses already incurred, there is an unconditional duty to indemnify at least some of the claims.

Finally, CPIM contends that the defendants may be precluded from seeking indemnification as a matter of law for securities fraud violations and that, therefore, there can be no "related to" jurisdiction based on an indemnification claim. It is true that there is no implied right of indemnification under Mass. Gen. Laws ch. 110A, § 410(a) and (b). See Kennedy v. Josephthal & Co., Inc., No. 82-913-MA, 1983 WL 1314, at *5 (D. Mass. May 9, 1983). However, it remains an open question whether contractual indemnification clauses are enforceable under the Massachusetts state securities laws.[3] Moreover, there is a right of contribution under Mass. Gen. Laws ch. 110A, § 410(b). Kennedy, 1983 WL 1314, at *6 (noting that the scope of persons entitled to contribution

---

[3] This court notes that "there is no [implied] right to indemnification as to ... federal securities law claims, since to permit violators to obtain total reimbursement of judgments against them would frustrate the federal policy to deter securities fraud." In re Atl. Fin. Mgmt., Inc. Sec. Litig., 718 F. Supp. 1012, 1015 (D. Mass. 1988), and cases cited. Nevertheless, courts have found "related to" jurisdiction based on written indemnification agreements in cases alleging federal securities violations. See, e.g., Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc., 399 B.R. 119, 123 (E.D.N.Y. 2009).

under ch. 110A, § 410(b) "has yet to be articulated"); <u>In re Atl. Fin. Mgmt., Inc. Sec.</u>

<u>Litig.</u>, 718 F. Supp. 1012, 1015 (D. Mass. 1988) (general contribution statute, Mass. Gen.

Laws ch. 231B, governs the parties' contribution rights in state securities law claims).

Based on the record before this court, it cannot be determined that the defendants will be

precluded from seeking indemnification and/or contribution as a matter of law for

securities law violations. Therefore, this court concludes that the removal of this action

based on "related to" jurisdiction was appropriate.

### B. <u>Mandatory Abstention</u>

CPIM argues that even if this court has jurisdiction over this action, it is neverthe-

less obligated to abstain in accordance with 28 U.S.C. § 1334(c)(2), the mandatory

abstention provision.[4] This court agrees.

"Pursuant to 28 U.S.C.A. § 1334(c)(2), a court must abstain from hearing a case

before it if the following criteria are met: (1) a timely motion to abstain is filed; (2) the

proceeding is based on a state law cause of action; (3) the action does not arise under

Title 11 but is merely related to a case under Title 11; (4) the action could not have been

commenced in federal court absent jurisdiction under 28 U.S.C.A. § 1334; (5) a state

---

[4] 28 U.S.C. § 1334(c)(2) provides:

> (2) Upon timely motion of a party in a proceeding based upon a State law
> claim or State law cause of action, related to a case under title 11 but not
> arising under title 11 or arising in a case under title 11, with respect to
> which an action could not have been commenced in a court of the United
> States absent jurisdiction under this section, the district court shall abstain
> from hearing such proceeding if an action is commenced, and can be timely
> adjudicated, in a State forum of appropriate jurisdiction.

court action has commenced; and (6) can be timely adjudicated." <u>C&A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.</u>, 369 B.R. 87, 92 (D.P.R. 2007) (citing <u>Goya Foods, Inc. v. Ulipiano Unanue-Casal</u>, 164 B.R. 216, 221 (D.P.R. 1993)). This case meets all these criteria.

It is undisputed that the plaintiff filed a timely motion to abstain, that the plaintiff has brought only state law claims, and that the instant action is not a core proceeding under Title 11, but is merely "related to" the bankruptcy cases. Therefore, the first three elements have been met. The defendants contend that the fourth element has not been met because there is also diversity jurisdiction in this court, so 28 U.S.C. § 1334 is not the sole basis for federal jurisdiction. For the reasons detailed in the Diversity R&R, however, this court finds that CPIM is the proper plaintiff, and that there is no diversity jurisdiction. Therefore, federal jurisdiction is based, if at all, on § 1334.

The defendants also argue that mandatory abstention is not available because once this action was removed from state court, no action remained pending there. Therefore, they contend, CPIM cannot meet the fifth element. This court disagrees.

28 U.S.C. § 1334(c)(2) provides that if the other elements are met, "the district court shall abstain from hearing such proceeding if <u>an action is commenced</u>, and can be timely adjudicated, in a State forum of appropriate jurisdiction." (Emphasis added). There are cases which have held that once an action is removed from state court, "there is no pending state proceeding" so abstention is not applicable. <u>See</u> <u>In re Lazar</u>, 237 F.3d 967, 981-82 (9th Cir. 2001), and cases cited therein. However, at least "four out of five

-13-

courts of appeals to have considered the issue concluded that the abstentions codified in

28 U.S.C.A. § 1334(c)(1) & (2) do apply to removal actions because the statutory

language only requires that a state action has been commenced as opposed to be

pending." C&A, S.E., 369 B.R at 92 (citing Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir.

2006); Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436 (2d Cir. 2005); Christo v.

Padgett, 223 F.3d 1324, 1331 (11th Cir. 2000); and Robinson v. Mich. Consol. Gas Co.,

918 F.2d 579, 584 (6th Cir. 1990)). See also In re Southmark Corp., 163 F.3d 925, 929

(5th Cir. 1999). Other courts in this circuit also have concluded that mandatory

abstention applies where the only state court action was removed under "related to"

bankruptcy jurisdiction. See, e.g., In re Culley, Bankr. No. 06-40081-JBR, 2006 WL

889377, at *1 (Bankr. D. Mass. Mar. 31, 2006); In re Punto Aparte/Cima Publicidad,

Inc., Bankr. No. 08-01350 (GAC), 2009 WL 249429, at *3 (Bankr. D.P.R. Jan. 30, 2009)

(slip op.). To conclude otherwise would mean that abstention would never apply to cases

which were removed from state court. However, there does not seem to be any "reason

why Congress could have decided to deny mandatory abstention to a party who filed his

state claim in a state court, only to have it removed to a federal court." Stoe, 436 F.3d at

214. This court recommends joining with the "majority view" and concludes that the

mandatory abstention provision applies to cases which were commenced in state court but

subsequently removed. See C&A, S.E., 369 B.R. at 92.

Finally, the defendants contend that the sixth requirement has not been met

because CPIM has failed to establish that the matter can be timely adjudicated in the state

court. This court disagrees. CPIM has established that the case has been accepted in the Business Litigation Session of the Massachusetts Superior Court, a session that operates under Time Standards Orders for each case and sets firm trial dates. "[N]obody can truly predict how long it will take for a complicated case to get to trial." In re United Container LLC, 284 B.R. 162, 174 (Bankr. S.D. Fla. 2002). There is no reason for this court to conclude that the matter would not be resolved as expeditiously in the time-standards state court session as here. See In re AK Servs., Inc., 159 B.R. 76, 85 (Bankr. D. Mass. 1993) (Bankruptcy Court was "not persuaded that it could oversee . . . claims any more expeditiously than the state court).

In determining whether a case can be "timely adjudicated" in a state forum, courts "have not focused primarily on when the case would be tried but rather on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case." In re United Container LLC, 284 B.R. at 174-75 (discussing factors considered), and cases cited. Since any trial of the instant case, either in this court or the state court, would proceed independently of all the pending bankruptcy proceedings, abstention would not interfere with the administration of any of the bankruptcy estates. In sum, CPIM has satisfied all the elements of § 1334(c)(2) and this court concludes that mandatory abstention applies.

### C.  **Permissive Abstention**

Even if mandatory abstention were not applicable, a "further basis for remanding a removed cause of action lies in 28 U.S.C. § 1452(b), which provides that the court to

which a claim or cause of action is removed may remand the claim or cause of action on

any equitable ground." In re Santa Clara County Child Care Consortium, 223 B.R. at

44.[5]  Factors to be considered in connection with deciding whether a case should be

remanded include:

> (1)    the effect of the action on the administration of the bank-
>        ruptcy estate;
> (2)    the extent to which issues of state law predominate;
> (3)    the difficulty of applicable state law;
> (4)    comity;
> (5)    the relatedness or remoteness of the action to the bankruptcy
>        case;
> (6)    the existence of a right to a jury trial; and
> (7)    prejudice to the party involuntarily removed from state court.

Id. at 46 (citing In re VideoCart, Inc., 165 B.R. 740, 744 (D. Mass. 1994)).  Applying

these principles to the instant case compels the conclusion that this action should be

remanded to the state court.

The effect of this case on bankruptcy matters does not favor keeping the case in

this court.  The defendants contend that the instant case is related to more than 20

separate bankruptcy proceedings pending in courts throughout the United States.

However, the defendants do not seek to have this case adjudicated in any bankruptcy

court — rather, they seek to have the case tried in this district court.  See Amended

---

[5]  28 U.S.C. § 1334(c)(1) provides, with an exception not relevant here, that "nothing in
this section prevents a district court in the interest of justice, or in the interest of comity with
State courts or respect for State law, from abstaining from hearing a particular proceeding arising
under title 11 or arising in or related to a case under title 11."  28 U.S.C. § 1452(b) provides that
the court to which an action has been removed "may remand such claim or cause of action on any
equitable ground."

<u>Defendants' Joint Memorandum of Law Opposing Plaintiff's Motion to Remand</u> (Docket

No. 179) ("<u>Defs.' Mem.</u>") at 15 n.16.  While this court has found "related to" jurisdiction,

the connection is not very strong.  The indemnification agreements do not involve all of

the defendants.  Furthermore, while some of those agreements involve current indemni-

fication obligations, others involve only potential indemnification obligations that are

quite remote.  There is little doubt that if the defendants are found liable for the $1.2

billion in damages the plaintiff is seeking, and the defendants are able to be indemnified

for these amounts from a bankrupt estate, the judgment against the debtor would impact

the bankruptcy estate.  However, that impact is not affected by the choice of forum.

Whether the case proceeds here or goes forward in state court, it will proceed to a jury

trial and the outcome will have the same impact on the bankruptcy proceedings.  In short,

the efficient administration of the bankruptcy-related estates will not be affected if this

court abstains and remands the matter to state court.  <u>See</u>, <u>e.g.</u>, <u>In re United Container</u>

<u>LLC</u>, 284 B.R. at 176 ("even if the ultimate allowance of claims against the bankruptcy

estate[s] may be affected, this 'effect' will not occur until the litigation is concluded and

there is no reason to believe that this will happen more quickly in the United States

district court").

      There is no dispute that issues of state law predominate in this case, and that the

case does not, at this juncture, raise any bankruptcy related issues.  While the federal

court is equipped to resolve cases based on Massachusetts securities law, the state

obviously has an interest in resolving cases under its own statutes.  With respect to

comity, CPIM is based in Massachusetts, the transactions all took place in Massachusetts, and most of the defendants either have offices in Massachusetts and/or were licensed to sell securities in Massachusetts. Thus, Massachusetts has an interest in this litigation. See In re Evarts, Bankr. No. 05-12681-JMD, 2006 WL 696136, at *3 (Bankr. D.N.H. Mar. 14, 2006) (where suit involves solely state law issues, which "may not be difficult, comity and the state's interest in developing its own law and applying it to its own citizens suggest remand is appropriate").

As detailed above, this case is only remotely related to any of the bankruptcy proceedings. The right to a jury trial is not affected in this case, since the defendants are not seeking to have this matter resolved in a bankruptcy court. Thus, these factors do not warrant a trial in federal court.

The defendants argue that this case could proceed more smoothly in federal court under the Federal Rules given the diverse locations of the defendants. That, however, would seem to be more of a problem for the plaintiff seeking discovery from the defendants. Nevertheless, the plaintiff, for whatever reason, has elected to bring suit in state court. Given that the transactions at issue took place in Massachusetts, both the state and federal courts are located in Boston, and the plaintiff's witnesses are located in Boston, there is no reason to usurp the plaintiff's choice to proceed in state court. See VideOcart, Inc., 165 B.R. at 744 ("Comity and respect for the plaintiff's choice of forum outweigh any arguments advanced by the defendants.").

-18-

Finally, this court finds compelling the fact that maintenance of the instant case in federal court does not further the purpose of "related to" jurisdiction. Trying the case here, in a court unconnected with any of the bankruptcy proceedings, will not enhance the bankruptcy court's ability "to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates." In re Boston Reg'l Med. Ctr., 410 F.3d at 105. "The Congress has made it plain that, in respect to noncore proceedings such as this (i.e., cases which assert purely state law causes of action), the federal courts should not rush to usurp the traditional precincts of the state courts." Mattingly v. Newport Offshore, Ltd., 57 B.R. 797, 799 (D.R.I. 1986). Consequently, 28 U.S.C. § 1334(c)(2) grants courts "broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." In re Vrusho, 316 B.R. 589, 592 (Bankr. D.N.H. 2004) (quotations and citation omitted).

Undeniably, cases of the type and scope of the instant case are often brought in federal court. Nevertheless, given the lack of ties to a bankruptcy proceeding or other compelling reason, the conclusion is inescapable that the removal of this case to district court was simply forum shopping. See In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 69 (among other factors, in determining whether permissive abstention is appropriate courts consider "the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties" (quotation omitted)).

The plaintiff's decision to commence suit in state court based on state law should be honored.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that while this court has jurisdiction to hear this case, this court should abstain from doing so under the doctrine of either mandatory or permissive abstention.  Therefore, CPIM's Motion to Remand (Docket No. 133) should be ALLOWED.[6]

                                             / s / Judith Gail Dein
                                             Judith Gail Dein
                                             U.S. Magistrate Judge

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).